TACHA, Circuit Judge,
dissenting:
I respectfully dissent. Rule 19(a) and Rule 24(a)(2) “are intended to mirror each other.” Oneida Indian Nation v. Madison Cnty., 605 F.3d 149, 162 (2d Cir.2010); see also Fed.R.Civ.P. 24, 1966 Amendment Note (“Intervention of right is here seen to be a kind of counterpart to Rule 19(a).... ”). “If a party is not ‘necessary’ under Rule 19(a) then it cannot satisfy the test for intervention as of right under Rule 24(a)(2).” Oneida Indian Nation, 605 F.3d at 162 (alterations omitted). Likewise, an applicant under Rule 24(a)(2) “is [generally] entitled to intervene in an action when his position is comparable to a [necessary party] under Rule 19(a)[ ].” Fed.R.Civ.P. 24, 1966 Amendment Note.
Of course, even if a party is deemed “necessary” under Rule 19(a), it will not be permitted to intervene under Rule 24(a)(2) if its motion is untimely. Although not an exhaustive list of the circumstances that render a motion to intervene untimely, an applicant’s motion is generally untimely if: (1) the applicant has delayed unduly in bringing its motion to intervene, see 7C Charles A. Wright et al., Federal Practice & Procedure § 1916 at 539-40 (3d ed. 2007) (“When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.”); or (2) the timing of the applicant’s intervention will cause undue prejudice to the existing parties, see Utah Ass’n of Cntys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir.2001) (“The requirement of timeliness is not a tool of retribution to punish the tardy would-be interve-nor, but rather a guard against prejudicing the original parties by a failure to apply sooner.”).
In this case, the district court held that the Nation is a “necessary party,” however, just over a month later, it denied the Nation’s motion to intervene as untimely. In my view, the Nation did not delay unduly in moving to intervene, nor would the timing of its intervention cause prejudice to the existing parties which outweighs the prejudice that would be caused by its exclusion from this lawsuit. Accordingly, I respectfully dissent from the majority’s opinion which affirms the denial of the Nation’s motion to intervene.
To begin, the majority applies the incorrect standard of review. Although we normally review a district court’s ruling on timeliness for an abuse of discretion, see, e.g., Coal, of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep’t of Interior, 100 F.3d 837, 840 (10th Cir.1996), when a district court’s decision is premised on an improper legal standard, it is not entitled to deference. See Kretzinger v. First Bank of Waynoka, 103 F.3d 943, 946 (10th Cir.1996) (“[W]hen a lower court’s factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to de novo review.”). The majority adopts a timeliness test that measures the applicant’s delay from the time it could no longer reasonably believe its interests were adequately represented by an existing party. The district court, however, did not apply this test. Rather, it held that “[t]he defendants have adequately demonstrated that the Cherokee Nation knew of its interest in this case *1240 from the outset of the litigation.” Aplt. App. Vol. V at 927-28 (emphasis added). Because the district court did not, in considering the timeliness of the Nation’s motion to intervene, take into account whether the Nation could have reasonably believed its interests were adequately represented by an existing party, it did not apply the correct test for timeliness. Therefore, its decision should be reviewed de novo rather than for an abuse of discretion.
Next, while I agree with the majority’s newly adopted test for timeliness, I cannot concur in its application of that test. As the majority correctly holds, when assessing the timeliness of a motion to intervene under Rule 24(a)(2), the applicant’s delay in bringing the motion is measured from the time the applicant could no longer reasonably believe its interests were adequately represented by an existing party.[1] See Reich v. ABC/York-Estes Corp., 64 F.3d 316, 322 (7th Cir.1995) (“[Applicants] reasonably believed their employer was representing their interests.”) (emphasis added); Sierra Club v. Espy, 18 F.3d 1202, 1206 (5th Cir.1994) (“[T]he movants legitimately believed that the Forest Service would defend its timber sales and planning.”) (emphasis added) (quotations omitted); Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir.1982) (“[T]he critical issue with respect to timeliness is whether the proposed intervenor moved to intervene as soon as it became clear that the interests of the unnamed class members would no longer be protected by the named class representatives.”) (emphasis added). With respect to the CERCLA damages claims, the majority concludes that the Nation could never have reasonably believed that its interests were adequately represented by the State because “[t]he State ... had not sought recovery of past, present, or future response costs of the Nation.” Maj. at 20-21. In other words, the majority holds that an applicant under Rule 24(a)(2) who is seeking damages cannot reasonably believe that its interests are adequately represented by an existing party unless an existing party explicitly seeks damages on behalf of the applicant.
The rule is simply not construed so narrowly. Indeed, “[t]he representation whose adequacy comes into question under [Rule 24(a)(2) ] is not confined to formal representation like that provided by a trustee for his beneficiary or a representative party in a class action for a member of the class.” Fed.R.Civ.P. 24, 1966 Amendment Note. Rather, we have gone so far as to presume adequate representation “when an applicant for intervention and an existing party have the same ultimate objective in the litigation.” Clinton, 255 F.3d at 1255. There can be little doubt that the ultimate objectives of the State and the Nation were congruent with respect to the CERCLA claims' — 'they both sought to recover monetary damages from Tyson in order to compensate for and repair the damage it allegedly caused to the IRW.
The majority also holds that even if the Nation could have reasonably believed its interests were adequately represented by the State when the lawsuit was initially filed, it “can still be charged with a delay of almost a year,” from the time Tyson filed its Rule 19 motion. Maj. at 1235. I disagree. In my view, at the time Tyson *1241 filed its Rule 19 motion, the Nation could have reasonably believed its interests were adequately represented because it could have reasonably believed that the State would be allowed to pursue CERCLA damages individually, and that the State and Nation could then jointly apportion those damages through agreement or in subsequent litigation.
In resolving Tyson’s Rule 19 motion, the district court concluded that “the only feasible way to compensate the co-trustees and avoid a double recovery or unjust enrichment to one trustee at the expense of another is to award damages in the ratio or percentage of actual management and control that is exercised by each of the various co-trustees,” and that it could “make no determination of the ratio or percentage of actual management and control exercised by the [Nation] in the Nation’s absence.” Oklahoma v. Tyson Foods, Inc., 258 F.R.D. 472, 480 (N.D.Okla.2009). For this point, the district court relied on Coeur D’Alene Tribe v. Asarco Inc., 280 F.Supp.2d 1094 (D.Idaho 2003) (“Coeur D’Alene I ”). That decision, however, had been subsequently reconsidered and reversed by the judge who issued it. See United States v. Asarco Inc., 471 F.Supp.2d 1063, 1068 (D.Idaho 2005) (“Coeur D’Alene II”) (“The Court revises its trusteeship ruling ... ”). Indeed, in Coeur D’Alene II, Judge Lodge held:
The language of the statute dictates that a co-trustee acting individually or collectively with the other co-trustees may go after the responsible party or parties for the full amount of the damage, less any amount that has already been paid as a result of a settlement to another trustee by a responsible party. If there is a later disagreement between the co-trustees, that disagreement would have to be resolved by successive litigation between the trustees, but it could in no way affect the liability of the responsible party or parties.
Id. Thus, until the district court resolved Tyson’s Rule 19 motion on July 22, 2009, the Nation could have, in reliance on Coeur D’Alene II, reasonably believed that the State could adequately represent its interest in this lawsuit.[2] In my view, the Nation’s delay should be measured from that date.
Next, I cannot agree with the majority’s assessment of the prejudice that the Nation’s intervention would cause Tyson. “The prejudice prong of the timeliness inquiry measures prejudice caused by the intervenor’s delay — not by the intervention itself.” Clinton, 255 F.3d at 1251 (quotations omitted). In its discussion of the prejudice Tyson would suffer if the Nation were permitted to intervene, the majority first cites the potential need for additional discovery and additional motions regarding the Nation’s claims. The fact that intervention may “double the work load” or “add issues” to a case, however, is a product “of intervention itself rather than the timing of the motion to intervene.” Id.
The majority further notes that because the trial date was less than three weeks away at the time the Nation sought to intervene, its intervention and the trial delay it would cause would significantly disrupt Tyson’s attorneys’ and witnesses’ schedules. To be sure, Tyson would suffer some added cost because of a trial delay only three weeks before trial was set to begin; however, Tyson is at least partly responsible for this belated delay and the *1242 attendant added cost. Although Tyson raised its Rule 19 defense in its answer, it waited over three years to pursue it. And, because the Nation could have reasonably believed its interests were adequately represented until the district court deemed it a “necessary” party, Tyson’s own delay in bringing its Rule 19 motion was a causal factor in the timing of the Nation’s motion to intervene. In my view, Tyson cannot now complain about the timing of the Nation’s motion to intervene when Tyson is at least partly responsible for that timing. Furthermore, Tyson should not be rewarded for waiting to pursue its Rule 19 defense until it would be arguably too late for the Nation to intervene.
I also cannot sympathize with Tyson’s protestations of the prejudice that would be caused by a trial delay when not long before the Nation sought to intervene, Tyson sought to continue the trial. It is irrelevant that Tyson’s motion for a continuance may “read[ ] less like a request for a continuance than a plea for rulings on pending motions.” Maj. at 1237. The fact remains that on June 30, 2009, Tyson sought to delay the trial and even argued that “[a] short continuance of the trial date would not prejudice any party.” Defs Mot. for Modification of May 14, 2009 Scheduling Order & Integrated Br. in Supp. at 3, Tyson Foods, Inc., No. 05-ev-329-GKF-PJC (N.D. Okla. June 30, 2009) (emphasis added). In my view, Tyson’s request for a continuance and its claim on June 30 that a trial delay would not prejudice any party greatly undermines its claim only two months later that a trial delay would cause it extreme prejudice.
Finally, in discussing whether any unusual circumstances counsel for or against allowing the Nation to intervene, the majority ignores one obvious unusual circumstance — the significant loss the State will potentially incur if the Nation is excluded from this lawsuit. During the more than three years that Tyson waited to bring its Rule 19 defense, the State expended significant time and money to develop its damages claims. When the district court ruled in favor of Tyson on its Rule 19 motion, all of those claims were dismissed. If the Nation is not permitted to intervene, the State and Nation will have to pursue the hundreds of millions of dollars in damages the State initially sought on its own, together in a subsequent lawsuit. Neither the State nor the Nation believes a subsequent cooperative suit is a realistic possibility. See ApltApp. Vol. V at 875 (Attorney General of the Nation explaining, “If we are not allowed to intervene in this lawsuit, we will have to, at some point, file a new lawsuit. We will have to try to join the State [ ] who also has immunity. Whether or not politically they can do it at that time is an issue. Whether or not we can afford to do it is a very real issue.”); see also Br. of State of Oklahoma at 31 (“Because neither sovereign can be joined against its will, both would again need concurrently to waive their sovereignty. Such coordination of priorities is often difficult, potentially providing [Tyson] with an unwarranted and unjust escape from liability for damages and/or response costs.”). Thus, if the Nation is excluded from this lawsuit, the State will potentially have wasted the significant amount of time and money it spent developing these complex damages claims. In my view, the loss Tyson would incur by having to rearrange its attorneys’ and witnesses’ schedules pales in comparison to the loss of time and money the State will potentially suffer if the Nation is excluded from this action.
In sum, the Nation did not delay unduly in seeking to intervene in this lawsuit. Rather, it acted quite prudently throughout and only sought to intervene when it could no longer reasonably believe that its interests were adequately represented by the State. Furthermore, because the prej *1243 udice the State will potentially suffer if the Nation is excluded from this case is significantly greater than the prejudice Tyson will suffer if the Nation is permitted to intervene, I would reverse the district court’s decision and allow the Nation to intervene so that all the claims relating to Tyson’s alleged pollution of the IRW can be tried together in one lawsuit. For these reasons, I respectfully dissent.

. Although the majority confusingly states that “we join the other circuits that measure delay from when the movant was on notice that its interests may not be protected by a party already in the case,” Maj. at 1232 (emphasis added), the majority’s application of this standard correctly measures delay from when the Nation could no longer reasonably believe its interests were adequately represented. See Maj. at 1233 ("The Nation could never have reasonably thought that the state was representing the Nation’s interests in recovering its damages.”).

. I express no view on whether the district court properly resolved Tyson's Rule 19 motion. Rather, I only point out that until that motion was resolved, the Nation could have reasonably believed that the district court would adopt the position of Coeur D'Alene II rather than the position of Coeur D’Alene I regarding the CERCLA trustee issue.